Joseph R. Saveri (SBN 130064)
Diane S. Rice (State Bar No. 118303)
Cadio Zirpoli (CA Bar No. 179108)
Ronnie S. Spiegel (*pro hac vice*)*
Christopher K. L. Young (SBN 318371)
Ivy Arai Tabbara (*pro hac vice*)*
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
     drice@saverilawfirm.com
     czirpoli@saverilawfirm.com
     rspiegel@saverilawfirm.com
     cyoung@saverilawfirm.com
     itabbara@saverilawfirm.com

Joseph J. DePalma (*pro hac vice* forthcoming)
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
jdepalma@litedepalma.com

*Attorneys for Individual and Representative Plaintiff
Daybreak Express, Inc.*

*\*Located in Washington State*

[additional counsel on signature block]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYBREAK EXPRESS, INC., individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CHINA INTERNATIONAL MARINE CONTAINERS (GROUP) CO., LTD.; SHANGHAI UNIVERSAL LOGISTICS EQUIPMENT CO., LTD. a/k/a "Dong Fang International Containers"; CXIC GROUP CONTAINERS CO. LTD.; SINGAMAS CONTAINER HOLDINGS LTD.; BOLIANG MAI; TIANHUA HUANG; YONGBO WAN; QIANMIN LI; YUQIANG ZHANG; SIONG SENG TEO; VICK NAM HING MA; DOE 1; DOE 2, and DOES 3-10,<br><br>    Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Case No.

**TABLE OF CONTENTS**

I.      NATURE OF THE CASE...................................................................................... 1

II.     THE PARTIES ................................................................................................. 2

     A.  Plaintiff .................................................................................. 2

     B.  Named Defendants .................................................................. 3

     C.  Unnamed Co-Conspirator Defendants and Agents ................................ 7

III.    JURISDICTION AND VENUE ............................................................. 8

IV.     FACTUAL ALLEGATIONS ............................................................... 9

     A.  Background on Shipping Containers ...................................................... 9

     B.  The Shipping Container Industry Is Highly Concentrated .................................. 10

     C.  Defendants Engaged in a Conspiracy to Restrict the Output and Fix the Prices of Standard Dry Shipping Containers .......................................................... 10

         1.  Defendants Hatched a Conspiracy to Restrict Manufacturing of Standard Dry Shipping Containers.......................................................... 10

         2.  Defendants Refined Their Operations Throughout the Conspiracy.................. 11

         3.  Defendants Exchanged Confidential Information Through In-Person Meetings, Emails, and Texts ..................................................................... 13

         4.  Defendants Actively Monitored Compliance with the Conspiracy and Punished Violators.......................................................................... 13

         5.  Defendants Halted the Growth of Smaller Competing Companies Not Involved in the Conspiracy ............................................................ 14

         6.  Defendants Attempted to Expand the Conspiracy to Refrigerated Containers.. 15

         7.  Defendants Knew the Conspiracy Violated Antitrust Laws and Took Steps to Conceal It ................................................................................. 15

     D.  Defendants' Conspiracy Caused a Supply Shortage and More than Doubled the Price of Standard Dry Shipping Containers............................................. 17

     E.  Defendants Reaped Substantial Profits From the Unlawful Conspiracy ................. 17

     F.  Defendants Have Been Indicted by the United States Department of Justice for the Same Conduct ........................................................................ 18

V.      ANTITRUST EFFECTS & DAMAGES........................................................ 18

VI.     RELEVANT MARKET ............................................................... 19

     A.  Relevant Product and Geographic Market............................................. 19

     B.  Manufacturer Defendants Share Market Power in the Relevant Market................ 20

Case No.

CLASS ACTION COMPLAINT

1. High Market Concentration ................................................................................... 20

2. High Barriers to Entry.......................................................................................... 20

3. Demand for Standard Dry Shipping Containers is Inelastic .............................. 21

VII. CLASS ACTION ALLEGATIONS ................................................................................ 21

VIII. FRAUDULENT CONCEALMENT AND TOLLING ....................................................... 24

IX.   CAUSES OF ACTION .................................................................................................. 25

X.    PRAYER FOR RELIEF ................................................................................................. 50

XI.   DEMAND FOR TRIAL BY JURY ................................................................................. 52

Case No.                                                  iii

Plaintiff, Daybreak Express, Inc., brings this class action on behalf of itself and a proposed class of indirect purchasers of Standard Dry Shipping Containers (the "Class") against China International Marine Containers (Group) Co., Ltd. ("CIMIC"); Shanghai Universal Logistics Equipment Co., Ltd. a/k/a Dong Fang International Containers ("Dong Fang"); CXIC Group Containers Co., Ltd. ("CXIC"); Singamas Container Holdings Ltd. ("Singamas"); Boliang Mai; Tianhua Huang; Yongbo Wan; Qianmin Li; Yuqiang Zhang; Siong Seng Teo; Vick Nam Hing Ma; and John Does 1,2 and 3-10 (together, "Defendants") to recover treble damages, injunctive relief, and any other relief as appropriate, based on violations of the Sherman Act and various state antitrust and consumer protection laws.

## I.    NATURE OF THE CASE

1.    This action arises from a years-long conspiracy by the world's dominant standard dry shipping container manufacturers to restrict the supply and fix the prices and suppress competition for critically needed standard dry shipping containers. Standard dry shipping containers are the most common type of shipping containers. They are non-refrigerated containers used to transport goods nationwide and across the world.

2.    Beginning no later than November 14, 2019, Defendants engaged in a concerted scheme to artificially inflate the price of standard dry shipping containers by agreeing to limit their production, despite high levels of demand and a shipping crisis during the Covid-19 pandemic.

3.    Defendants—the largest standard dry shipping container manufacturers in the world—together control approximately 95% of the world's production of standard dry shipping containers.

4.    Rather than compete, Defendants coordinated with one another to restrict the production and artificially raise the price of standard dry shipping containers, despite souring demand. Through these operations Defendants exchanged confidential information.

5.    Defendants engaged in this conspiracy through in-person meetings, emails, and text exchanges. Defendants even reduced some aspects of their conspiracy to a written agreement. Defendants adapted their conspiracy to further restrict output of Standard Dry

Case No.

CLASS ACTION COMPLAINT

Shipping Containers and ensure success of their unlawful goals to artificially raise prices, all the while taking steps to keep their coordinated activity secret.

6. During a time when demand for shipping containers was at a high due to a global supply chain crisis during the Covid-19 pandemic, Defendants agreed not to build any new manufacturing facilities, and first agreed to limit the hours employees could work on factory production lines before ultimately agreeing to place a quota on the number of standard dry shipping containers Defendants produced. Defendants established a system to monitor compliance with the unlawful scheme through video surveillance at their factories, under the threat of financial penalties that were managed by a fund that Defendants established for any conspirator that fell out of line. Defendants engaged in this conduct despite knowing it was in violation of the competition laws.

7. As a result of Defendants' unlawful conspiracy, the price of Standard Dry Shipping Containers more than doubled, while Defendants reaped extraordinary profits.

8. As a result, Plaintiff and class members have paid supracompetitive prices for standard dry shipping containers.

9. Defendants were indicted by a Grand Jury in the United States District Court for the Northern District of California in October 2025 and again through a superseding indictment issued on January 22, 2026, and unsealed to the public on May 19, 2026, for their unlawful conduct.

10. Plaintiff, on behalf of itself and all other indirect purchasers of standard dry shipping containers during the Class Period, brings this class action complaint against Defendants for violations of Section 1 of the Sherman Antitrust Act, as well as various state antitrust, consumer protection, and unjust enrichment laws.

## II.   THE PARTIES

### A.   Plaintiff

11. **Plaintiff Daybreak Express, Inc.** ("Daybreak Express" or "Plaintiff") is a private corporation incorporated in New Jersey with its principal place of business located at 500

Avenue P, Newark, NJ 07105. Daybreak Express is an expedited shipping service and trucking company with ports in New York and New Jersey.

12. During the Class Period, Plaintiff purchased standard dry shipping containers indirectly from one or more Defendants for its own use in commercial transportation services. Plaintiff suffered antitrust injury and damages by paying artificially inflated prices as a direct result of the antitrust violations alleged herein.

**B.    Named Defendants**

13. **Defendant China International Marine Containers (Group) Co., Ltd.** ("CIMC") is a publicly traded company, organized and existing under the laws of the People's Republic of China with a principal place of business located at CIMC R&D Center, 2 Gangwan Avenue, Shekou, Nanshan District, Shenzhen, China. CIMC was engaged in the business of manufacturing standard dry shipping containers and selling them to customers in the United States and elsewhere.

14. **Defendant Shanghai Universal Logistics Equipment Co., Ltd.**, also known as Dong Fang International Containers ("Dong Fang"), is a company organized and existing under the laws of the People's Republic of China with a principal place of business located at Building 4, Lane 1318, Shangcheng Road, Pudong New Area, Shanghai, China. Dong Fang owns, manages, and does business as a brand of shipping containers called Dong Fang International Containers, also known as DF, DFIC, or Dong Fang. Dong Fang is engaged in the business of manufacturing dry shipping containers and selling them to customers in the United States and elsewhere.

15. **Defendant CXIC Group Containers Co., Ltd.** ("CXIC") is a company organized and existing under the laws of the People's Republic of China with a principal place of business located at 11-12/F, Xincheng International Building, 88 Tong Jiang South Road, Changzhou, Jiangsu Province 213003, China. CXIC is engaged in the business of manufacturing dry shipping containers and selling them to customers in the United States and elsewhere.

16. **Defendant Singamas Container Holdings, Ltd.** ("Singamas") is a publicly traded company, organized and existing under the laws of Hong Kong in the People's Republic

Case No.                                                3
CLASS ACTION COMPLAINT

of China with a principal place of business located at 15th Floor, Allied Kajima Building, No. 138 Gloucester Road, Wanchai, Hong Kong. Singamas is engaged in the business of manufacturing dry shipping containers and selling them to customers in the United States and elsewhere.

17.    **Defendant Boliang Mai** was employed by CMIC in various senior roles. From August 2015 through July 2020, Mai served as President and Chief Executive Officer ("CEO") of CIMC. From August 2020 through at least 2024, he served as Chairman and CEO of CIMC. Mai is believed to be a resident of the People's Republic of China. Mai personally participated in, authorized, or directed the unlawful acts set forth in this Complaint. Mai actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint, including acts directed at the United States and this District. Mai committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

18.    **Defendant Tianhua Huang**, also known as T.H. Huang, is a Vice President at CIMC and believed to be a resident of the People's Republic of China. Huang personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Huang actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Huang committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

19.    **Defendant Yongbo Wan** is a General Manager of CIMC's Operation Management Center and is believed to be a resident of the People's Republic of China.  Wan personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Wan actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Wan committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

20.     **Defendant Qianmin Li** is a General Manager at Don Fang and is believed to be a resident of the People's Republic of China. Li personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Li actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Li committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

21.     **Defendant Yuqiang Zhang**, also known as James Zhang, is CEO of CXIC and believed to be a resident of the People's Republic of China. Zhang personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Zhang actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Zhang committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

22.     **Defendant Siong Seng Teo**, also known as S.S. Teo, is CEO and Chairman of Singamas and believed to be a resident of the Republic of Singapore. Teo personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Teo actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Teo committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

23.     **Defendant Vick Nam Hing Ma**, also known as Vick Ma, is a Marketing Director at Singamas and believed to be a resident of Hone Kong, People's Republic of China. Ma personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Ma actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Ma committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

24.     Upon information and belief, the individuals above and other current and former officers, directors, agents, employees or representatives of Defendants have developed and executed the anticompetitive conspiracy detailed herein to restrict output and artificially increase the price of Standard Dry Shipping Containers.

25.     **Defendant Doe 1** (also referred to as **Co-Conspirator A**) is a company organized and existing under the laws of the People's Republic of China. Co-Conspirator A is engaged in the business of manufacturing dry shipping containers and selling them to customers in the United States and elsewhere. Doe 1 personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Doe 1 actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Doe 1 committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

26.     **Defendant Doe 2** (also referred to as **Co-Conspirator B** is a company organized and existing under the laws of the People's Republic of China. Co-Conspirator B is engaged in the business of manufacturing dry shipping containers and selling them to customers in the United States and elsewhere. Doe 2 personally participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Doe 2 actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Doe 2 committed overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

27.     **Defendants Does 3-10** are persons or entities engaged in the business of manufacturing dry shipping containers and selling them to customers in the United States and elsewhere. Doe 3-10 personally or individually participated in, authorized, or directed the unlawful acts set forth in this Complaint, including acts directed at the United States and this District. Does 3-10 actively participated in the formation, implementation, operation and concealment of the illegal antitrust conspiracy set forth in this Complaint. Does 3-10 committed

overt acts in furtherance of the conspiracy and received personal remuneration and benefits from doing so.

### C.   Unnamed Co-Conspirator Defendants and Agents

28.   "**Defendants**," as used herein, refers to and includes each of the named Defendants' predecessors, successors, assigns, agents, parents, wholly owned or controlled subsidiaries, affiliates, employees, officers, and directors.

29.   Defendants participated in the alleged conspiracy through the acts of their officers, directors, agents, partners, employees, representatives, affiliates, subsidiaries, and companies they acquired through mergers and acquisitions while they were actively engaged in the management, direction, control, or transaction of the corporations' business or affairs, and for whom they are liable.

30.   Various other persons, firms, and corporations not named as Defendants have participated as co-conspirators with Defendants and have performed acts in furtherance of the illegal conduct described in this Complaint. Defendants are jointly and severally liable for the acts of these unnamed co-conspirators. They have participated as co-conspirators with Defendants in the offenses alleged and have performed acts and made statements in furtherance of the contract, combination, or conspiracy to raise prices of Standard Dry Shipping Containers.

31.   Other persons, firms or entities acted as the agents of principals in furtherance of the contract, combination of conspiracy to raise prices of Standard Drey Shipping Containers. They did so with the actual and appearance of authority to act on behalf of such principals, who were aware of and benefitted from these acts.

32.   Whenever reference is made to any act of any corporation, the allegation means that the corporation engaged in the act by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

33.   To the extent that discovery reveals there are subsidiaries, holding companies, or other entities affiliated with any Defendant that participated in, supported, advanced, and/or held

Case No.
7
CLASS ACTION COMPLAINT

assets resulting from the unlawful conduct alleged herein, Plaintiffs reserve the right to name any such entities as Defendants.

34.   Whenever reference is made to any act, deed, or transaction of any corporation or partnership, the allegation means that the corporation or partnership engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, representatives, parent, predecessors, or successors-in-interest while they were actually engaged in the management, direction, control, or transaction of business or affairs of the corporation or partnership.

35.   Defendants are also liable for acts done in furtherance of the alleged conduct by companies they acquired through mergers and acquisitions.

## III.   JURISDICTION AND VENUE

36.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a), as this action arises under Section 1 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 3, and Section 16 of the Clayton Act, 15 U.S.C. § 26. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because such claims form part of the same case or controversy as Plaintiff's federal antitrust claims.

37.   This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), in that (a) this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and (b) Plaintiff and members of the class are citizens of the United States, and (c) Defendants are citizens or subjects of a foreign state.

38.   This Court has personal jurisdiction over each Defendant because they purposefully directed their activities toward persons and entities in this District and throughout the United States by manufacturing, marketing, and selling standard dry shipping containers into the stream of commerce in the United States, including this District, availed themselves of the privilege of transacting business in the United States, including this District, have substantial contacts within the United States, including this District; and are engaged in a conspiracy that is aimed at causing, and has caused harm to Plaintiff and members of the Class located, or operating in the United States, including this District.

Case No.

8

CLASS ACTION COMPLAINT

39. Venue is proper in this District under 15 U.S.C. §§ 15, 22 and 28 U.S.C. § 1391(b), (c), and (d) because Defendants transacted business, were found, or had agents in this District through the sale, distribution, and marketing of standard dry shipping containers, a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and a substantial portion of the affected interstate trade and commerce was carried out in this District.

40. Defendants' conduct, as alleged herein, substantially and foreseeably affected interstate commerce in the United States, including in this District.

41. Defendants sell standard dry shipping containers in the continuous and uninterrupted flow of interstate commerce, including in this District.

## IV.  FACTUAL ALLEGATIONS

### A.  Background on Shipping Containers

42. Each year, billions of dollars worth of goods are imported into and exported out of the United States and transported across the United States in millions of shipping containers.

43. There are different types of shipping containers, including refrigerated and non-refrigerated. The most common type of shipping container is a non-refrigerated shipping container, also known as a "dry" container or "dry box". Dry Containers are general-purpose enclosed boxes made of rust-retardant steel.

44. Dry containers are sold in both standard and non-standard dimensions. The four standard dimensions for standardized dry shipping containers are: (1) 20-feet long at a shorter height; (2) 40-feet long at a shorter height; (3) 40-feet long at a taller height (called "high-cube"); and (4) 45-feet long at the high cube height (referred hereinafter as "Standard Dry Shipping Containers").

45. Shipping lines, logistics and transportation services companies, and retailers purchase and use Standard Dry Shipping Containers to transport various goods into, out of, and throughout the United States, spending billions of dollars per year on shipping containers. In addition to transporting goods on ships, Standard Dry Shipping Containers can be carried by trucks to transport goods across the nation's roads and highways.

Case No.    9

**B.     The Shipping Container Industry Is Highly Concentrated**

46.     The shipping container manufacturing industry is highly concentrated, including the market for Standard Dry Shipping Containers.

47.     Together, Defendants manufacture roughly 95% of the world's supply of Standard Dry Shipping Containers.

**C.     Defendants Engaged in a Conspiracy to Restrict the Output and Fix the Prices of Standard Dry Shipping Containers**

**1.     Defendants Hatched a Conspiracy to Restrict Manufacturing of Standard Dry Shipping Containers**

48.     Beginning as early as March 2019, several of the Defendants and their co-conspirators began discussing a scheme to restrict the output and fix the prices of Standard Dry Shipping Containers.

49.     On or about November 14, 2019, executives from CMIC (Yongbo Wan and Tianhua Huang), Dong Fang (Qianmin Li), CXIC (Yuqiang Zhang), along with an executive from Co-Conspirator A, met in person at CMIC's headquarters in Shenzhen. During this meeting the executives reached an agreement to restrict their respective companies manufacturing output of Standard Dry Shipping Containers by various means, including:

50.     Limiting the number of shifts and hours that each production line for Standard Dry Shipping Containers could run per day;

51.     Installing video surveillance on all dry container production lines to ensure that the companies did not exceed the agreed-upon limitations;

52.     Not building any new container manufacturing factories; and

53.     Establishing a fund that included a mechanism to penalize financially any Defendant that cheated on the output-restriction agreement.

54.     The goal of Defendants' output restrictions agreement was to artificially raise the price of Standard Dry Shipping Containers.

55.     No executives from Singamas or Co-Conspirator B were present at the November 14, 2019, meeting. However, the participants in the November 14, 2019, meeting contemplated

Case No.                                    10

that Singamas and Co-Conspirator B would join the agreement. Singamas and Co-Conspirator B did just that and joined in the agreement at least as early as March 2020.

56. The companies planned to meet again on or around November 21, 2019. On or about that date, an executive from Singamas emailed another Singamas executive, Siong Seng Teo, reporting that Qianmin Li of Don Fang had called for "all the (6) factories" to meet on December 3, 2019, at Dong Fang's office in Shanghai. The Singamas executive stated that "[t]he meeting agenda will be production capacity and healthy development of container industry, etc."

57. According to an email from a Singamas executive to Siong Seng Teo, "[r]epresentatives from 6 factories attended the meeting at Dong Fang Shanghai office [on December 3, 2019." The Singamas executive reported to Teo that Defendants discussed (i) limiting the number of shifts and hours that each production line for Standard Dry Shipping Containers could run per day; (ii) building "[n]o new production line;" (iii) installing "CCTV [. . . ] in all production lines in March 2020;" (iv) having each factory submit a deposit that would be deducted "[i]f any factory break [*sic*] the agreement." The executive also reported to Teo that "[d]uring the meeting, I have reminded them not to be high profile since it might violate the Monopoly Law or being accused of price manipulation by our customers."

58. Defendants memorialized aspects of their agreement to restrict output in a written contract titled "Shenzhen Moon Gazing Equity Investment Fund" (the "Moon Gazing Fund" contract). CIMC circulated a draft of the contract to the other Defendants on or around February 2020. The Defendants then held a ceremony in or around March 2020, where they executed a final version of the Moon Gazing Fund contract.

**2.    Defendants Refined Their Operations Throughout the Conspiracy**

59. The Defendants refined the operation of their agreement to restrict output of Standard Dry Shipping Containers as the conspiracy continued. For instance, by September 2020 the Defendants agreed how many Standard Dry Shipping Containers each would manufacture for specific customers, whom the Defendants referred to as "mainstream customers" or "mainstream clients." These customers included major U.S.-based container lessors, shipping lines, and

Case No.

11

CLASS ACTION COMPLAINT

logistics companies, in addition to container lessors, shipping lines, and logistics companies based in Europe, the People's Republic of China, and elsewhere.

60.    Defendants then agreed to cap the total volume of containers the companies produced across all customers, rather than just limit the hours worked on the production line, as initially agreed, and limit production for certain customers.

61.    On or about July 7, 2022, Singamas executives, including Siong Seng Teo, met to discuss Defendants' measures to restrict manufacturing output of Standard Dry Shipping Containers. In that meeting, Teo stated that Singamas "would prefer a monthly total quota instead" of "the restriction on working hours per day." Following that meeting (from at least as early as September 2022 until at least as late as November 2023), Defendants agreed to cap the total cargo volume of containers that Defendants produced. On or about November 20, 2023, for example, Vick Ma of Singamas co-presented to Teo the conspiracy's "Total Allowable capacity" and "allowable quota" for production-organized by each company conspirator and its factory lines. The image below is an excerpt from that presentation (redacting the names of Co-Conspirator A and Co-Conspirator B):

- **Dec allowable quota - 50 hours= 125,000 Teus for whole industry**

CLASS ACTION COMPLAINT

62. Vick Ma's presentation to Siong Seng Teo, excerpted above, referenced the term "TEUs." TEU is an abbreviation for Twenty-foot Equivalent Unit and is the standard unit of measurement for quantifying cargo capacity in the shipping and logistics industry.

### 3. Defendants Exchanged Confidential Information Through In-Person Meetings, Emails, and Texts

63. In addition to the in-person meetings and emails described above, Defendants and their co-conspirators used additional methods of communication to exchange information and promote, facilitate, police, and monitor their agreement to restrict manufacturing output of Standard Dry Shipping Containers.

64. For example, Defendants and their co-conspirators created a text message group chat in the application WeChat and a list of contacts at each Defendant company. Yongbo Wan of CIMC, Tianhua Huang of CIMC, Qianmin Li of Dong Fang, and Yuqiang Zhang of CXIC were employees listed as contacts for their respective companies.

65. The in-person meetings continued throughout the conspiracy. One such meeting took place in or around February 2023 between Vick Ma of Singamas, Tianhua Huang and Yongbo Wan of CIMC, Qianmin Li of Dong Fang, and Yuqiang Zhang of CXIC.

66. Another in-person meeting took place in or around March 2024 at CMIC's Shenzhen headquarters. Boliang Mai, Yongbo Wan, and Tianhua Huang of CIMC, an executive from Dong Fang, Yuqiang Zhang of CXIC, Vik Ma of Singamas, and two executives from Co-Conspirator Company A met to discuss output "control mechanisms."

67. Defendants also had the opportunity to meet and discuss aspects of their conspiracy through their participation in trade associations, such as the China Container Industry Association ("CCIA").

### 4. Defendants Actively Monitored Compliance with the Conspiracy and Punished Violators

68. Defendants installed video-surveillance systems at their factories to ensure that no company violated the agreed-upon output restrictions. In total, the conspirators installed about 87 cameras on 49 different container production lines in Defendants' factories.

Case No.

CLASS ACTION COMPLAINT

69.     Defendants and their co-conspirators used the video-surveillance systems to monitor compliance with their output restriction operation. For example, in or around June 2021, Yongbo Wan of CIMC emailed Tianhua Huang of CIMC an audit of the company conspirators' production lines, including screenshots from the surveillance footage. Below is a screenshot of surveillance footage from Co-Conspirator A's factory that was included in the audit (with Co-Conspirator A's company name redacted):



### 5.   Defendants Halted the Growth of Smaller Competing Companies Not Involved in the Conspiracy

70.     Defendants also worked to halt the growth of smaller Standard Dry Shipping Container manufacturers who were not part of the conspiracy. Beginning at least as early as 2020 and continuing periodically throughout the conspiracy, the conspirators discussed how to respond to these smaller Standard Dry Shipping Container manufacturers and gathered information on their output and customers.

71.     On or around August 7 and 10, 2023, the conspirators discussed waging "war" against smaller manufacturers outside the conspiracy. The conspirators sought "to strike back by sentencing [sic] the price war against these small factories. [. . .] The aim is to signalize these

small factories not to grab the orders in low price [sic] which violated the effort to stabilize the price[.]"

### 6.    Defendants Attempted to Expand the Conspiracy to Refrigerated Containers

72.    Shortly after Defendants agreed to restrict output and fix prices of Standard Dry Shipping Containers, at least CMIC and Don Fang sought to expand the conspiracy to refrigerated shipping containers, also known in the industry and referred to hereinafter as "reefers."

73.    Specifically, on or about May 15, 2020, Tianhua Huang of CIMC emailed the CEO of a competing reefer manufacturer. In that email, Tianhua Huang stated that the manufacturers of Standard Dry Shipping Containers had "reached a consensus and established industry self-discipline actions" to address, among other things, "overcapacity," and he suggested that "all standard reefer manufacturers, like the standard dry box manufacturers, shall negotiate and communicate with each other, act together, follow the dry box practice, mainly including, (a) No capacity increase, (b) All standard reefer manufacturers run one shift only."

74.    The CEO from the competing reefer manufacturer declined the invitation, writing that "any such coordination is strictly forbidden by the compliance policies" of his company.

### 7.    Defendants Knew the Conspiracy Violated Antitrust Laws and Took Steps to Conceal It

75.    Defendants knew their agreement violated antitrust laws and took steps to conceal it. Indeed, Defendants and their co-conspirators expressed a preference for discussing the output restrictions in person to "avoid the suspicion of industry monopoly[.]" Defendants actively engaged in steps to conceal the conspiracy.

76.    In or around December 2019, in response to the report from a Singamas executive (Singamas Executive 1) on the meeting of all six conspirator companies, Siong Seng Teo wrote that "we also need to keep low key." A board member of Singamas ("Singamas Board Member 1") replied that "[t]he discussion appeared to be anti-competition to me [....] I feel very uneasy reading your report. May be [sic] we should delete this string of emails after reading?" Teo

Case No.                                    15

answered: "Yes I feel the same, told [Singamas Executive 1] and [another Singamas executive] at am call."

77. In or around October 2021, while preparing a presentation to Singamas's board of directors, Singamas executives exchanged a draft slide deck for the meeting. The draft slides mentioned a "[m]anufacturing sector official and unofficial association/alliance." One executive told the other, "I am generally fine with your ppt except on page 3, please delete 'alliance' as it is quite sensitive under anti-trust law."

78. In or around March 2022, a CIMC executive circulated to fellow CIMC co-executives, including Tianhua Huang and Yongbo Want, a report by a then-U.S. Federal Maritime Commissioner and an excerpt from an interview of that commissioner. The CIMC executive quoted a Chinese translation of the Commissioner's statement that "Chinese container manufacturing clearly took steps together to suppress the market prior to the pandemic. Those efforts resulted in part in the congestion issues and increases in containerized prices and magnified the issues created by congestion down the line. So, they used their market power to control the market." In response, CIMC Chairman Boliang Mai instructed Huang and Wan to pay close attention, but to neither respond nor discuss.

79. In or around March 2022, a Singamas executive commented on a draft slide deck for Siong Seng Teo's upcoming presentation to investors of Singamas's 2021 annual results. The executive suggested to Teo and other Singamas executives that, for the topic of "market discipline, it is better not to put on the slide due to anti-trust issue." Teo replied: "Appreciate, I will make some amendments to the slide (take out come [sic] words) and revert tomorrow am."

80. In or around March 2023, Vick Ma prepared minutes of a March 2023 meeting between himself, Teo, and other Singamas executives. At that meeting, a Singamas executive "raised concern about the Anti-Trust violation" and was concerned that "there may be a risk of being sued by clients."

**D.      Defendants' Conspiracy Caused a Supply Shortage and More than Doubled the Price of Standard Dry Shipping Containers**

81.      Defendants and their co-conspirators restricted output through their scheme during the height of the COVID-19 Pandemic, when global supply chains were under severe strain and there was a surging demand for Standard Dry Shipping Containers.

82.      Defendants knew their plan to restrict output would lead to higher prices for Standard Dry Shipping Containers. For instance, on or about December 13, 2019, the chairman of CMIC Boliang Mai sent an email to his subordinates Tianhua Huang, Yongbo Wan, and another executive from CMIC that predicted that the price of 20-foot Standard Dry Shipping Containers would rise to more than $2,000. Mai warned the recipients not to forward his email.

83.      Defendants' predictions (and goal) rang true. During the conspiracy, the price of Standard Dry Shipping Containers more than doubled. From 2019 to 2021, the price of a standard dry 20-foot container more than doubled from roughly $1,600 to over $3,500. During this same period, the price of a standard dry 40-foot container more than doubled from roughly $2,800 to over $5,900; and the price of a standard dry 40-foot high cube container doubled from roughly $3,000 to over $6,000. From 2019 to 2022, the price of a standard dry 45-foot high cube container increased from roughly $4,100 to over $5,730.

**E.      Defendants Reaped Substantial Profits From the Unlawful Conspiracy**

84.      Defendants' profits skyrocketed because of their artificial price increases for Standard Dry Shipping Containers. For example, the profits of CIMC's container manufacturing business segment increased nearly one hundredfold from $137 million Chinese yuan in 2019 (about $19.8 million USD) to $1.99 billion yuan in 2020 (about $288 million USD) to $11.3 billion yuan (about $1.75 billion USD) in 2021.

85.      Singamas's net income went from a loss of about $110 million USD in 2019 to profits of about $4.6 million in 2020 and about $186.8 million in 2021.

86.      Defendants remarked on the industry's profitability during the conspiracy. In or around May 2020, Dong Fang wrote to CIMC and praised how the agreement on the production of Standard Dry Shipping Containers had restored profitability to the industry.

Case No.                                                                17
CLASS ACTION COMPLAINT

87. In or around April 2021, an executive from Singamas emailed Siong Seng Teo of Singamas to highlight the positive profit outlook for the container manufacturing industry. The Singamas executive reported to Teo that given "strong demand, container shortage, plus strict discipline in pricing and working hours, I believe all container factories have significant increase in sales revenue and profit." And in or around January 2023, Singamas executives wrote to each other that the entire industry profited from the conspiracy in 2021 and 2022.

**F.    Defendants Have Been Indicted by the United States Department of Justice for the Same Conduct**

88. Defendants have been under investigation by the United States Department of Justice ("DOJ") for the same conduct to restrict output and artificially raise the price of Standard Dry Shipping Containers as alleged in this complaint.

89. In October 2025, a Grand Jury in the United States District Court for the District of Northern California indicted Defendants (under seal) and certain executives employed by Defendants on felony charges of output restriction and price fixing in violation of the Sherman Act. A Grand Jury before the same court issued a superseding indictment on January 22, 2026, which was unsealed by the court on May 19, 2026.

## V.    ANTITRUST EFFECTS & DAMAGES

90. Defendants' anticompetitive conduct has had the following effects, among others:

91. Price competition for Standard Dry Shipping Containers has been restrained or eliminated;

92. Prices for Standard Dry Shipping Containers sold by the Defendants and their divisions, subsidiaries, affiliates, or co-conspirators, in turn, have been raised, fixed, maintained, or stabilized at artificially high, noncompetitive levels throughout the United States;

93. purchasers of Standard Dry Shipping Containers have been deprived of free and open competition; and

94. purchasers of Standard Dry Shipping Containers have paid artificially inflated prices.

Case No.                                            18

95. The ultimate purpose of Defendants' conduct is to raise, fix, maintain, or stabilize the price of Standard Dry Shipping Containers and, as a direct and foreseeable result, Plaintiff and the Class have paid supracompetitive prices for Standard Dry Shipping Containers during the Class Period.

96. Generally accepted economic principles dictate that an overcharge at the top of a multi-level distribution chain will result in higher prices at every level of distribution below. Therefore, at least some portion of an anticompetitive overcharge will be passed on by intermediaries, such as distributors, dealers and brokers, to end users.

97. Here, while direct purchasers of Standard Dry Shipping Containers were the first to pay supracompetitive prices, some or all of the overcharges were passed along the distribution chain and absorbed by downstream purchasers, including Plaintiff and class members, when they purchased Standard Dry Shipping Containers.

98. By reason of the alleged violations of the antitrust laws, Plaintiff and Class Members have sustained injury, having paid higher prices for Standard Dry Shipping Containers than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and as a result, they have suffered damages.

99. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

100. Defendants' price fixing agreement and information exchange are *per se* unlawful, or, alternatively, are unlawful under either a quick look or rule of reasons analysis. Under the *per se* standard, and additionally where, as here, there are demonstrable anticompetitive effects, a relevant product and geographic market need not be defined. However, Plaintiff defines such markets below in case their allegations are ultimately analyzed under a quick look or rule of reason analysis.

## VI.   RELEVANT MARKET

### A.   Relevant Product and Geographic Market

101. To the extent the definition of a relevant product market is legally relevant in this action, the relevant product market is Standard Dry Shipping Containers.

Case No.

19

102.    Standard Dry Shipping Containers include categories and types of dry shipping containers that have standardized measurements. Standard Dry Shipping Containers are differentiated from dry shipping containers that are non-standard in size, and refrigerated shipping containers.

103.    To the extent a definition of a relevant geographic market is legally relevant in this action, the geographic market is the United States and its territories. Defendants sell Standard Dry Shipping Containers across the United States and have increased prices for Standard Dry Shipping Containers nationwide.

**B.    Manufacturer Defendants Share Market Power in the Relevant Market.**

104.    The Standard Dry Shipping Containers market exhibits hallmark characteristics of markets prone to cartel behavior, including: (1) high market concentration; (2) high barriers to entry; and (3) inelastic demand.

### 1.    High Market Concentration

105.    A highly concentrated market is more susceptible to collusion and other anticompetitive practices than less concentrated markets.

106.    The United States Standard Dry Shipping Containers manufacturing market is highly concentrated, with the Defendants dominating both production and sales. Defendants produce and sell 95% of Standard Dry Shipping Containers.

107.    As a result, the United States Standard Dry Shipping Containers market is exceptionally concentrated, heightening the risk of collusion and other anticompetitive behavior. With only a few large companies (the Defendants) controlling the vast majority of production and sales, they can more easily monitor one another's conduct, align pricing, allocate territories, and maintain supracompetitive prices over time.

### 2.    High Barriers to Entry

108.    Under basic economic principles, supracompetitive pricing ordinarily would attract new entrants seeking to capitalize on elevated margins. However, when significant barriers to entry exist, new competitors are far less likely to enter.

Case No.

20

CLASS ACTION COMPLAINT

109. The Standard Dry Shipping Containers market is characterized by exceptionally high barriers to entry that insulate incumbent manufacturers from competitive pressure.

### 3.      Demand for Standard Dry Shipping Containers is Inelastic

110. Demand in the Standard Dry Shipping Containers market is highly inelastic, a condition that economic theory recognizes as making industries especially susceptible to cartel or other anticompetitive behavior. When demand is inelastic, increases in price do not meaningfully reduce the quantity purchased, allowing firms engaged in collusion to raise prices without risking significant loss of sales.

111. Demand for Standard Dry Shipping Containers is inelastic because they are indispensable for transporting goods.

112. As a result, buyers like Plaintiff are particularly vulnerable to collusion. Defendants can raise prices with little fear of substitution or reduced demand.

## VII.   CLASS ACTION ALLEGATIONS

113. Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(2) on behalf of itself and as representative of a class of Indirect Purchasers seeking injunctive relief (the "Nationwide Injunctive Relief Indirect Class") defined as follows:

> **All persons or entities who indirectly purchased Standard Dry Shipping Containers from one or more Defendants and their co-conspirators in the United States and its territories from November 14, 2019 to the present.**

114. In addition, Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of itself and all others similarly situated seeking damages as well as equitable relief, on behalf of the following class (the "State Law Damages Class"):

> **All persons or entities who indirectly purchased Standard Dry Shipping Containers from one or more Defendants or co-conspirators in Alabama, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and**

**Wisconsin from November 14, 2019 to the present.**

115. Specifically excluded from both the Nationwide Injunctive Relief Indirect Class and the State Law Class (collectively, the "Indirect Purchaser Classes") are: Defendants; any of their officers, directors, or employees; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant; any federal, state, or local governmental entities; any judicial officer presiding over this action and the members of his or her immediate family and judicial staff; any juror assigned to this action; any co-conspirator identified in this action, and persons and entities that paid for the price of transportation, freight, or logistics services in which the cost of standard dry shipping containers manufactured by one or more Defendants or co-conspirators was included as a component of the price charged for such services, but who did not purchase or acquire ownership of the containers themselves.

116. Plaintiff reserves the right to modify these definitions or to propose subclasses, as appropriate, based on further investigation and discovery.

117. **Numerosity**. Plaintiff does not know the exact number of members of the Indirect Purchaser Classes because such information is in the exclusive control of Defendants. Due to the nature of the trade and commerce involved, there are most likely hundreds of thousands of members of the Indirect Purchaser Classes, geographically dispersed throughout the United States, such that joinder of all members of the Indirect Purchaser Classes is impracticable.

118. **Typicality**. Plaintiff's claims are typical of the claims of the Indirect Purchaser Classes in that it and members of the Indirect Purchaser Classes all purchased Standard Dry Shipping Containers at artificially inflated prices. All members of the Indirect Purchaser Classes were damaged by the same wrongful conduct of Defendants, and the relief sought is common to the Class.

119. **Commonality**. Questions of law or fact that arise from Defendants' anticompetitive conduct are common to the Indirect Purchaser Classes, including, but not limited to, the following:

Case No.

22

CLASS ACTION COMPLAINT

     a.   Whether Defendants engaged in a combination or conspiracy to restrict output and fix, raise, maintain, or stabilize the price of Standard Dry Shipping Containers in the United States;

     b.   Whether such combination or conspiracy constituted violations of the Sherman Antitrust Act;

     c.   Whether such combination or conspiracy violated the antitrust, unfair competition, and consumer protection laws of various states;

     d.   Whether the conduct of Defendants, as alleged herein, caused injury to Plaintiff and other members of the Indirect Purchaser Classes;

     e.   Whether Defendants caused Plaintiff and the members of the Indirect Purchaser Classes to suffer damages in the form of overcharges on Standard Dry Shipping Containers indirectly purchased from the Defendants;

     f.   The effect of Defendants' conspiracy on Standard Dry Shipping Containers sold in the United States during the Class Period;

     g.   The identity of the participants of the alleged conspiracy;

     h.   The duration of the conspiracy alleged herein, and the acts performed by Defendants in furtherance of the conspiracy;

     i.   Whether Defendants fraudulently concealed their misconduct;

     j.   Whether Defendants' anticompetitive scheme inflated prices of Standard Dry Shipping Containers above competitive levels;

     k.   The appropriate measure of class-wide damages for the Indirect Purchaser Classes; and

     l.   The nature and scope of injunctive relief necessary to restore competition in the Standard Dry Shipping Containers market.

120.   **Predominance**. These and other questions of law and fact are common to the Indirect Purchaser Classes and predominate over any questions affecting only individual class members. In addition, Defendants have acted on grounds generally applicable to the Indirect

Case No.               23

Purchaser Classes, thereby making final injunctive relief appropriate with respect to the Indirect Purchaser Classes as a whole.

121. **Adequacy**. Plaintiff will fairly and adequately represent the interests of the Indirect Purchaser Classes and have no known conflict with any other members of the Indirect Purchaser Classes. Further, Plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

122. **Superiority**. A class action is superior to the alternative of individual actions for the fair and efficient adjudication of this controversy. There will be no material difficulty in the management of this action as a class action. Prosecution as a class action will eliminate the possibility of repetitive litigation, and thus costly and duplicative efforts and expenses. In the same vein, proceeding as a class action has the benefit of providing injured persons with a method of obtaining relief for their claims that might not be economically feasible. In addition, the prosecution of separate actions would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

123. **Injunctive Relief**. Defendants have acted or refused to act on grounds generally applicable to the members of the Indirect Purchaser Classes, making injunctive and corresponding declaratory relief appropriate with respect to these classes as a whole pursuant to Federal Rule of Civil Procedure 23(b)(2).

## VIII.   FRAUDULENT CONCEALMENT AND TOLLING

124. Throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful and anticompetitive conduct from Plaintiff and class members. Any applicable statute of limitations has been tolled and suspended by Defendants' knowing and active concealment of their unlawful conduct.

125. Plaintiff and class members had no actual or constructive knowledge of Defendants' anticompetitive scheme. And Plaintiff and the Class did not discover, nor could they have discovered, through the exercise of reasonable diligence, the existence of the conduct alleged until shortly before filing this Complaint.

Case No.                                                    24

126. Further, the very nature of Defendants' conduct was secret and self-concealing because Defendants hid their conduct through multiple methods, including confidential meetings and secret communications.

127. Defendants' anticompetitive conspiracy, by its very nature, was self-concealing. Defendants' conduct was revealed only through the investigation of the DOJ and the unsealing of the superseding indictment on May 19, 2026, that a Grand Jury issued on January 22, 2026.

IX.    CAUSES OF ACTION

### COUNT I

**Conspiracy to Fix Prices in Restraint of Trade in Violation of
the Sherman Act, 15 U.S.C. §§ 1, 3
(On behalf of Nationwide Class for Injunctive and Equitable Relief)**

128. Plaintiff repeats the foregoing allegations as if fully set forth herein.

129. Beginning at a time currently unknown to Plaintiff, but at least as early as November 14, 2019, and continuing through to the present, Defendants entered into and engaged in a continuing contract, combination or conspiracy to unreasonably restrain trade or commerce in violation of Sections 1 and 3 of the Sherman Act.

130. The contract, combination or conspiracy consisted of an agreement among Defendants to (1) restrict the manufacturing capacity and output of Standard Dry Shipping Containers sold in the United States; (2) fix, raise, stabilize, or maintain the prices they charged for Standard Dry Shipping Containers in the United States at artificially high levels; and (3) exchange competitively sensitive information, causing anticompetitive effects without sufficient procompetitive justifications.

131. Defendants' anticompetitive conduct had the following effects, among others:

a. Price competition among Defendants has been restrained, suppressed, or eliminated with respect to Standard Dry Shipping Containers;

b. The prices of Standard Dry Shipping Containers have been fixed, stabilized, maintained or increased at artificially high, non-competitive levels throughout the United States;

Case No.                                    25
CLASS ACTION COMPLAINT

c.    Plaintiff and Class members who purchase Standard Dry Shipping Containers indirectly from Defendants have been deprived of the benefits of free and open competition between and among Defendants; and

d.    Purchasers of Standard Dry Shipping Containers paid artificially inflated prices.

132.    This conduct is unlawful under the *per se* standard. Defendants' conduct is also unlawful under either a "quick look" or rule of reason analysis because the agreement is anticompetitive with no valid procompetitive justifications. Moreover, even if there were valid procompetitive justifications, such justifications could have been reasonably achieved through less restrictive means of competition.

133.    Defendants' production restrictions, price-fixing, and other actions in furtherance of their conspiracy, as Defendants intended, directly, substantially, and foreseeably increased prices that purchasers paid for Standard Dry Shipping Containers in the United States.

134.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and class members were injured in their business or property and will continue to be injured in the form of overcharges on Standard Dry Shipping Containers they would not otherwise have paid absent Defendants' conduct.

135.    Plaintiff and Class members are entitled to an injunction against Defendants to end the alleged ongoing violations alleged herein.

### COUNT II

**Information Exchange in Violation of the Sherman Act, 15 U.S.C. §§ 1, 3**
**(On behalf of Nationwide Class for Injunctive and Equitable Relief)**

136.    Plaintiff incorporates and realleges each allegation set forth in the preceding paragraphs, as though fully set forth herein.

137.    From at least November 14, 2019, and continuing through the present, the Defendants formed an unlawful contract, combination, or conspiracy in unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3.

Case No.                                              26
CLASS ACTION COMPLAINT

138. The contract, combination or conspiracy consisted of agreement to exchange competitively sensitive information about their operations, causing anticompetitive effects without sufficient procompetitive justifications.

139. The information exchange and agreement has had the following effects, among others: (a) price competition in the market for Standard Dry Shipping Containers has been restrained, suppressed, or eliminated; (b) prices for Standard Dry Shipping Containers produced by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; (c) Plaintiff and members of the Class who purchased Standard Dry Shipping Containers indirectly from Defendants have been deprived of the benefits of free and open competition; and (d) purchasers Standard Dry Shipping Containers paid artificially inflated prices.

140. Plaintiff and members of the Class have been injured and will continue to be injured in the form of overcharges on Standard Dry Shipping Containers.

141. This information exchange and agreement to restrict output have been undertaken in furtherance of a price fixing agreement, which is unlawful *per se*. Defendants' conduct is also unlawful under either a "quick look" or rule of reason analysis because the exchange is anticompetitive with no valid procompetitive justifications. Moreover, even if there were valid procompetitive justifications, such justifications could have been reasonably achieved through means less restrictive of competition.

142. Defendants' unlawful information exchange and agreement to restrict output directly, substantially, and foreseeably increased prices that purchasers paid for Standard Dry Shipping Containers in the United States.

143. Plaintiff and members of the Class have been injured and will continue to be injured in the form of overcharges on Standard Dry Shipping Containers.

144. Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

Case No.

27

CLASS ACTION COMPLAINT

Case 4:26-cv-05571-HSG     Document 1     Filed 06/09/26     Page 31 of 56

**COUNT III**

**Violations of State Antitrust Statutes – Price Fixing and Unlawful Information Exchange
(On behalf of Plaintiff and the State Law Damages Class)**

145.    Plaintiff incorporates and realleges each allegation set forth in the preceding paragraphs, as though fully set forth herein.

146.    During the Class Period, Defendants engaged in continuing contracts, combinations, or conspiracies with respect to the sale of Standard Dry Shipping Containers in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

147.    One contract, combination, or conspiracy consisted of an agreement among Defendants to restrict output and fix, raise, inflate, stabilize, or maintain at artificially supra-competitive prices for Standard Dry Shipping Containers in the United States and its territories.

148.    A second contract, combination or conspiracy consisted of agreement to exchange competitively sensitive information about their operations, causing anticompetitive effects without sufficient procompetitive justifications.

149.    As a result, Plaintiff and members of the Damages Class were deprived of free and open competition and paid more for Standard Dry Shipping Containers than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is  the type of harm the antitrust laws of the states included herein were designed to prevent, and this injury flows from that which makes Defendants' conduct unlawful.

150.    Accordingly, Plaintiff and the members of the Damages Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

151.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations of the following state antitrust statutes:

152.    **Alabama**: Defendants have entered into unlawful agreements in restraint of trade in violation of Ala. Code § 6-5-60, *et seq*. Defendants' conspiracies had the following effects: (1)

Case No.                                          28

price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Alabama; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alabama; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ala. Code § 6-5-60, *et seq.*

153. **Arizona**: Defendants have entered into an unlawful agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Arizona; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

154. **California**: Defendants have entered into unlawful agreements in restraint of trade in violation of Cal. Bus. & Prof. Code §§ 16700, *et seq.* Defendants' conspiracies alleged herein has had the following effects: (1) price competition for Standard Dry Shipping Containers has been restrained, suppressed, or eliminated in the State of California; (2) Standard Dry Shipping Container prices were fixed, raised, stabilized, and pegged at artificially high, non-competitive levels throughout California; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected California commerce. Accordingly, Plaintiff and members

Case No.                                    29

of the Damages Class seek all forms of relief available under Cal. Bus. & Prof. Code §§ 16720, *et seq.*

155. **Colorado**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Colo. Rev. Stat. §§ 6-4-104, *et seq.* Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Colorado; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Colo. Rev. Stat. §§ 6-4-104, *et seq.*

156. **Connecticut**: Defendants have entered into unlawful agreements in restraint of trade in violation of Conn. Gen. Stat. Ann. §§ 35-26, *et seq.* Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Connecticut; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Connecticut; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Conn. Gen. Stat. Ann. §§ 35-26, *et seq.*

157. **Delaware:** Defendants have entered into unlawful agreements in restraint of trade in violation of Del. Code Ann. tit. 6 §§ 2100, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Delaware; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Delaware; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the

Case No.                                                30

Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected commerce in Delaware. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Del. Code Ann. tit. 6 §§ 2100, *et seq*.

158. **District of Columbia**: Defendants have entered into unlawful agreements in restraint of trade in violation of D.C. Code §§ 28-4501, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under D.C. Code §§ 28-4501, *et seq*.

159. **Hawaii:** Defendants have entered into unlawful agreements in restraint of trade in violation of Haw. Rev. Stat. §§ 480-1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Hawaii; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Haw. Code §§ 480-1, *et seq*.

160. **Illinois**: Defendants have entered into unlawful agreements in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping

Containers was restrained, suppressed, and eliminated throughout Illinois; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq*.

161. **Iowa**: Defendants have entered into unlawful agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Iowa; (2) Standard Dry Shipping Container prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq*.

162. **Kansas**: Defendants have entered into unlawful agreements in restraint of trade in violation of Kan. Stat. §§ 50-101, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Kansas; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kan. Stat. §§ 50-101, *et seq*.

Case No.                                                   32

163. **Louisiana:** Defendants have entered into unlawful agreements in restraint of trade in violation of La. Rev. Stat. tit. 51, §§ 121 *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Louisiana; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Louisiana; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Louisiana commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under La. Rev. Stat. tit. 51, §§ 121 *et seq*.

164. **Maine**: Defendants have entered into unlawful agreements in restraint of trade in violation of Me. Rev. Stat. Ann. tit. 10, §§ 1101 *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Maine; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Me. Rev. Stat. Ann. tit. 10, §§ 1104 *et seq*.

165. **Maryland**. Defendants have entered into unlawful agreements in restraint of trade in violation of Md. Commercial Law Code Ann. § 11-201, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Maine; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Maine

commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Me. Rev. Stat. Ann. tit. 10, §§ 1104 *et seq.*

166. **Michigan**: Defendants have entered into unlawful agreements in restraint of trade in violation of Mich. Comp. Laws §§ 445.771, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Michigan; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mich. Comp. Laws §§ 445.771, *et seq*.

167. **Minnesota**: Defendants have entered into unlawful agreements in restraint of trade in violation of Minn. Stat. §§ 325D.49, *et seq*. Defendants' conspiracies had the following effects: (1) Price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Minnesota; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minn. Stat. §§ 325D.49, *et seq*.

168. **Mississippi**: Defendants have entered into unlawful agreements in restraint of trade in violation of Miss. Code §§ 75-21-1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Mississippi; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the

Case No.                                     34

Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Miss. Code §§ 75-21-1, *et seq*.

169. **Nebraska**: Defendants have entered into unlawful agreements in restraint of trade in violation of Neb. Rev. Stat. §§ 59-801, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Nebraska; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Neb. Rev. Stat. §§ 59-801, *et seq*.

170. **Nevada**: Defendants have entered into unlawful agreements in restraint of trade in violation of Nev. Rev. Stat. Ann. §§ 598A.010, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Nevada; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nev. Rev. Stat. Ann. §§ 598A.010, *et seq*.

171. **New Hampshire**: Defendants have entered into unlawful agreements in restraint of trade in violation of New Hampshire Revised Statutes Ann. § 356:1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout New Hampshire; (2) Standard

Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes § 356:1, *et seq*.

172.   **New Jersey**: Defendants have entered into unlawful agreements in restraint of trade in violation of New Jersey Annotated Statutes § 56:9-1, *et seq.* Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout New Jersey; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Jersey; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New Jersey commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Jersey Annotated Statutes § 56:9-1, *et seq.*

173.   **New Mexico**: Defendants have entered into unlawful agreements in restraint of trade in violation of New Mexico Statutes Annotated §§ 57-1-1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout New Mexico; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

174.    **New York**: Defendants have entered into unlawful agreements in restraint of trade in violation of New York General Business Laws §§ 340, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout New York; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York General Business Laws §§ 340, *et seq*.

175.    **North Carolina**: Defendants have entered into unlawful agreements in restraint of trade in violation of North Carolina General Statutes §§ 75-1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout North Carolina; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina General Statutes §§ 75-1, *et seq*.

176.    **North Dakota**: Defendants have entered into unlawful agreements in restraint of trade in violation of N.D. Cent. Code §§ 51-08.1-01, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout North Dakota; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial

effect on North Dakota commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under N.D. Cent. Code §§ 51-08.1-01, *et seq*.

177. **Oregon**: Defendants have entered into unlawful agreements in restraint of trade in violation of Or. Rev. Stat. §§ 646.725, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Oregon; (2) Standard Dry Shipping Container prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Or. Rev. Stat. §§ 646.780, *et seq*.

178. **Puerto Rico**: Defendants have entered into unlawful agreements in restraint of trade in violation of P.R. Laws Ann. tit. 10 §§ 258, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Puerto Rico; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Puerto Rico; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct substantially affected commerce in Puerto Rico. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under P.R. Laws Ann. tit. 10 §§ 258, *et seq*.

179. **Rhode Island**: Defendants have entered into unlawful agreements in restraint of trade in violation of Rhode Island General Laws §§ 6-36-4, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Rhode Island; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Damages Class were deprived of free and open competition; and (4)

members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Rhode Island General Laws §§ 6-36-11, *et seq*.

180. **South Dakota**: Defendants have entered into unlawful agreements in restraint of trade in violation of South Dakota Codified Laws §§ 37-1-3.1, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout South Dakota; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

181. **Tennessee**: Defendants have entered into unlawful agreements in restraint of trade in violation of Tenn. Code Ann. §§ 47-25-101, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Tennessee; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tenn. Code Ann. §§ 47-25-101, *et seq*.

182. **Utah**: Defendants have entered into unlawful agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained,

Case No.
39
CLASS ACTION COMPLAINT

suppressed, and eliminated throughout Utah; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq*.

183. **Vermont**: Defendants have entered into an unlawful agreements in restraint of trade in violation of 9 Vermont Stat. Ann. §§ 2453, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Vermont; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. §§ 2465, *et seq*.

184. **West Virginia**: Defendants have entered into unlawful agreements in restraint of trade in violation of West Virginia Code §§ 47-18-3, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout West Virginia; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-9, *et seq*.

Case No.                                                                40

185.    **Wisconsin**: Defendants have entered into unlawful agreements in restraint of trade in violation of Wis. Stat. §§ 133.01, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Wisconsin; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wis. Stat. §§ 133.01, *et seq*.

## COUNT IV

### Violation of State Consumer Protection Statutes – Price Fixing and Unlawful Information Exchange
### (On behalf of Plaintiff and the State Law Damages Class)

186.    Plaintiff incorporates and realleges, each allegation set forth in the preceding paragraphs, as though fully set forth herein.

187.    During the Class Period, Defendants engaged in unfair competition or unfair, or unconscionable acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

188.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and Class members were injured and are threatened with further injury.

189.    Defendants' anticompetitive acts, described herein, constitute violations of the following state consumer protection laws:

190.    **California**: Defendants have engaged in unfair competition, unfair and unlawful acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. Defendants' unfair and unlawful conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout California; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) members of the Damages Class were deprived of free and open

competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful and unfair conduct substantially impacted commerce in California. Accordingly, Plaintiff and Class members seek all forms of available relief under Cal. Bus. & Prof. Code §§ 17200, *et seq*.

191. **Florida**: Defendants have engaged in unfair trade, unfair, or unconscionable acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Florida; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful and unconscionable conduct substantially impacted commerce in Florida. Accordingly, Plaintiff and Class members seek all forms of available relief under Fla. Stat. §§ 501.201, *et seq*.

192. **Hawaii**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation in violation of Haw. Rev. Stat. § 480-2. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Hawaii; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Hawaii. Accordingly, Plaintiff and Class members seek all forms of available relief under Haw. Rev. Stat. § 480-2.

193. **Idaho**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation in violation of Idaho Code Ann. §§ 48-601, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping

Containers was restrained, suppressed, and eliminated throughout Idaho; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Idaho; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Idaho. Accordingly, Plaintiff and Class members seek all forms of available relief under Idaho Code Ann. §§ 48-601, *et seq*.

194.   **Illinois**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/10a, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Illinois; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Illinois. Accordingly, Plaintiff and Class members seek all forms of available relief under 815 Ill. Comp. Stat. Ann. 505/10a, *et seq*.

195.   **Indiana**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation in violation of Ind. Code §§ 24-5-0.5-3, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Indiana; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Indiana; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Indiana. Accordingly, Plaintiff and Class members seek all forms of available relief under Ind. Code §§ 24-5-0.5-3, *et seq.*

Case No.
43
CLASS ACTION COMPLAINT

196.    **Massachusetts**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A, §1, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Massachusetts; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Massachusetts. Accordingly, Plaintiff and Class members seek all forms of available relief under Mass. Gen. Laws Ann. Ch. 93A, §1, *et seq*.

197.    **Minnesota**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation of the Minnesota Consumer Protection Act, Minn. Stat. § 325F.69, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Minnesota; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Minnesota. Accordingly, Plaintiff and Class members seek all forms of available relief under Minn. Stat. § 325F.69, *et seq*.

198.    **Missouri**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation in violation of Mo. Rev. Stat. §§ 407.010, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Missouri; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) members of the Damages Class were deprived of

free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Missouri. Accordingly, Plaintiff and Class members seek all forms of available relief under Mo. Rev. Stat. §§ 407.010, *et seq*.

199. **Montana**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation in violation of Mont. Code §§ 30-14-101, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Montana; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Montana. Accordingly, Plaintiff and Class members seek all forms of available relief under Mont. Code §§ 30-14-101, *et seq*.

200. **Nebraska**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Nebraska; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Nebraska. Accordingly, Plaintiff and Class members seek all forms of available relief under Neb. Rev. Stat. § 59-1601, *et seq*.

Case No.
45
CLASS ACTION COMPLAINT

201. **Nevada**: Defendants have engaged in unfair competition, unfair, or unconscionable acts or practices in violation of the Nevada Deceptive Trade Practices Act. Nev. Stat. § 598.0923, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Nevada; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in Nevada. Accordingly, Plaintiff and Class members seek all forms of available relief under Nev. Stat. § 598.0923, *et seq*.

202. **New Jersey:** Defendants have engaged in unfair competition, unfair, or unconscionable acts or practices in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, *et seq.* Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout New Jersey; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Jersey; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in New Jersey. Accordingly, Plaintiff and Class members seek all forms of available relief under N.J. Stat. Ann. 56:8-1, *et seq*.

203. **New Mexico**: Defendants have engaged in unfair competition, unfair unconscionable acts or practices in violation of New Mexico Stat. §§ 57-12-1, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout New Mexico; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, and unconscionable conduct substantially impacted commerce in New Mexico. Accordingly, Plaintiff and Class members seek all forms of available relief under N.M. Stat. §§ 57-12-1, *et seq*.

204. **North Carolina**: Defendants have engaged in unfair competition, unfair, or unconscionable in violation of N.C. Gen. Stat. §§ 75-1.1, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout North Carolina; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in North Carolina. Accordingly, Plaintiff and Class members seek all forms of available relief under this statute. N.C. Gen. Stat. §§ 75-1.1, *et seq*.

205. **Pennsylvania**: Defendants have engaged in unfair competition, unfair or unconscionable acts or practices in violation in violation of 73 Pa. Stat. Ann. §§ 201-1, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Pennsylvania; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Pennsylvania; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unfair and unconscionable conduct substantially impacted commerce in Pennsylvania. Accordingly, Plaintiff and Class members seek all forms of available relief under 73 Pa. Stat. Ann. §§ 201-1, *et seq*.

Case No.

47

CLASS ACTION COMPLAINT

206. **Rhode Island**: Defendants have engaged in unfair competition, unfair, or unconscionable acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act. R.I. Gen. Laws §§ 6-13.1-1, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Rhode Island; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in Rhode Island. Accordingly, Plaintiff and Class members seek all forms of available relief under R.I. Gen. Laws §§ 6-13.1-1, *et seq*.

207. **South Carolina**: Defendants have engaged in unfair competition, unfair, or unconscionable acts or practices in violation of S.C. Code Ann. §§ 39-5-20, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout South Carolina; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in South Carolina. Accordingly, Plaintiff and Class members seek all forms of available relief under S.C. Code Ann. §§ 39-5-20, *et seq*.

208. **Vermont**: Defendants have engaged in unfair competition, unfair, or unconscionable acts or practices in violation of 9 Vermont Stat. Ann. §§ 2451, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Vermont; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of

Case No.                                       48
CLASS ACTION COMPLAINT

free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in Vermont. Accordingly, Plaintiff and Class members seek all forms of available relief under 9 Vermont Stat. Ann. §§ 2451, *et seq.*

209.    **Virginia**: Defendants have engaged in unfair competition, unfair, or unconscionable acts or practices in violation of the Va. Code Ann. §§ 59.1-196, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout Virginia; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in Virginia. Accordingly, Plaintiff and Class members seek all forms of available relief under Va. Code Ann. §§ 59.1-196, *et seq*.

210.    **West Virginia**: Defendants have engaged in unfair competition, unfair, or unconscionable acts or practices in violation of the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-6-101, *et seq*. Defendants' conduct has had the following effects: (1) price competition for Standard Dry Shipping Containers was restrained, suppressed, and eliminated throughout West Virginia; (2) Standard Dry Shipping Container prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Standard Dry Shipping Containers. During the Class Period, Defendants' unlawful, unfair, or unconscionable conduct substantially impacted commerce in West Virginia. Accordingly, Plaintiff and Class members seek all forms of available relief under W.Va. Code §§ 46A-6-101, *et seq*.

Case No.                                             49
                                          CLASS ACTION COMPLAINT

**COUNT V**

**Unjust Enrichment**
**(On Behalf of Plaintiff and the State Law Damages Class)**

211.    Plaintiff incorporates and realleges, as though fully set forth herein, each allegation set forth in the preceding paragraphs.

212.    To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.[1]

213.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices, and unlawful profits on sales of Standard Dry Shipping Containers.

214.    Defendants have benefitted from their unlawful acts, and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff or the Class Members for Standard Dry Shipping Containers.

215.    Plaintiff and Class Members are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and Class Members are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Class may make claims on a pro rata basis.

216.    Pursuit of any remedies against the firms from whom Plaintiff and Class Members purchased Standard Dry Shipping Containers subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

**X.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Classes herein, adjudging and decreeing that:

---

[1] Unjust enrichment claims are alleged under the laws of the following states: Alabama, Arkansas, Arizona, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Louisiana, Maine, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

A.      The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed: (a) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act; (b) a *per se* violation of Section 1 of the Sherman Act; (c) an unlawful combination, trust, agreement, understanding or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; or, alternatively, (d) acts of unjust enrichment by Defendants as set forth herein;

B.      Plaintiff and the Damages Class recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgment in favor of Plaintiff and members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

C.      Plaintiff and members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution or disgorgement of profits unlawfully obtained;

D.      Plaintiff and members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment, and the Court establish of a constructive trust consisting of all ill-gotten gains from which Plaintiff and members of the Damages Class may make claims on a pro rata basis;

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any

Case No.

51

CLASS ACTION COMPLAINT

manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

G.    Plaintiff and the members of the Damages Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.    Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.    Any other relief as the case may require and the Court may deem just and proper.

## XI.    DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: June 9, 2026                              By:      /s/ Joseph R. Saveri
                                                            Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Diane S. Rice (State Bar No. 118303)
Cadio Zirpoli (CA Bar No. 179108)
Ronnie S. Spiegel (*pro hac vice*)*
Christopher K. L. Young (SBN 318371)
Ivy Arai Tabbara (*pro hac vice*)*
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
          drice@saverilawfirm.com
          czirpoli@saverilawfirm.com
          rspiegel@saverilawfirm.com
          cyoung@saverilawfirm.com
          itabbara@saverilawfirm.com

*Located in Washington State*

Joseph J. DePalma (*pro hac vice* forthcoming)
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
jdepalma@litedepalma.com

Laura K. Mummert (*pro hac vice* forthcoming)
Steven J. Greenfogel (*pro hac vice* forthcoming)
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(267) 314-7980
lmummert@litedepalma.com
sgreenfogel@litedepalma.com

Michael J. Flannery (SBN 196266)
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
Two CityPlace Drive
St. Louis, MO  63141
Telephone:  (314) 226-1015
mflannery@cuneolaw.com

Evelyn Riley (*pro hac vice* forthcoming)
Alexandra Klein (*pro hac vice* forthcoming)
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
2445 M St. NW
Suite 740
Washington, D.C. 20037
Telephone: (202) 789-3960
evelyn@cuneolaw.com
aklein@cuneolaw.com

*Attorneys for Plaintiff and the Putative Class*